# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NIKIESHA CLEVELAND, on behalf of herself and others similarly situated, )<br>)<br>) | Case No. 1:21-cv-01713-CAB |
| ) | Judge Christopher A. Boyko |
| Plaintiff, )<br>) | |
| v. )<br>) | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |
| FOUNDATIONS HEALTH SOLUTIONS, LLC., )<br>)<br>) | |
| Defendant. ) | |

Representative Plaintiff Nikiesha Cleveland and Defendant Foundations Health Solutions, LLC (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") Settlement.[1] The Settlement was reached by experienced wage and hour counsel during arm's length, good faith negotiations and a full-day mediation before a third-party neutral. The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release;

**Exhibit 2**: Declaration of Shannon M. Draher; and

**Exhibit 3**: Proposed Order Granting Approval of FLSA Settlement.

---

[1] All capitalized terms not defined in this Joint Motion shall have the meanings ascribed to them in the Collective Action Settlement Agreement and Release (the "Agreement").

**MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION**

The Parties ask the Court to approve the attached Agreement.  The Settlement was reached during arm's length, good faith negotiations by experienced wage and hour attorneys, and after a full day of mediation before a third-party neutral.  If approved, the Settlement will provide timely and substantial payments to the Plaintiffs, and this case will be dismissed with prejudice.

A.  **Background**

On September 2, 2021, Representative Plaintiff filed this lawsuit, on behalf of herself and others similarly situated, asserting claims against Defendant under the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). Specifically, Representative Plaintiff alleged that Defendant failed to pay Representative Plaintiff and others similarly situated for the time they spent working through unpaid meal breaks, which resulted in overtime violations. (ECF No. 1).

On September 29, 2021, Defendant filed its Answer.  (ECF No. 4).

On December 21, 2021, Representative Plaintiff filed her Motion for Conditional Certification.  (ECF No. 32).  The Court granted that Motion on July 28, 2022.  (ECF No. 35).

On September 6, 2022, Representative Plaintiff's Counsel issued notice and consent forms to members of the putative collective defined as "All current and former State Tested Nursing Aides (STNA's) who were employed by Defendant Foundations Health Solutions, Inc. at any time from September 2, 2018 to the present."  872 individuals have joined this case.  (Draher Dec. ¶ 12).

The Parties participated in a full-day mediation with Jerome Weiss on February 6, 2023. The Parties reached an agreement at the mediation.  (Draher Dec. ¶ 13).

Prior to the mediation, Defendant produced the time and payroll records for the Plaintiffs. Representative Plaintiff's Counsel hired a PhD to construct a damages model using the records produced by Defendant. (Draher Dec. ¶ 14).

### B. Summary of the Settlement

The total settlement amount, or Global Settlement Fund, is $295,000. This amount includes: (1) all Individual Settlement Payments to Plaintiffs; (2) Service Award to Representative Plaintiff; and (3) Plaintiffs' Counsel's Attorneys' Fees and Costs. The Global Settlement Fund does not include Defendant's share of the payroll taxes for payments made as W-2 wages under the terms of the Agreement, the mediator's fees or the Settlement Administrator's fees. The total settlement amount reflects approximately 70% of the alleged unpaid overtime as calculated by Plaintiffs' Counsel's. (Draher Dec. ¶ 15).

After deducting the Service Award and Attorneys' Fees and Costs, the remaining Net Settlement Fund will be distributed to Plaintiffs according to his or her *pro rata* share of the Net Settlement Fund based on the amount of estimated alleged unpaid overtime owed to the Plaintiff as calculated in Plaintiffs' Counsel's damages model. (Draher Dec. ¶ 16).

The Settlement provides for a $5,000 Service Award to Representative Plaintiff in recognition of, and in consideration for, her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Plaintiffs. (Draher Dec. ¶ 17).

The Settlement provides also provides for the payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount and reimbursement of Plaintiffs' Counsel's costs and expenses in the amount of $15,973.33.

## II.    THE COURT SHOULD GRANT FINAL FLSA APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied

Courts presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, the Settlement satisfies the seven factors used by the Sixth Circuit when evaluating collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13.

#### 1. No Indicia of Fraud or Collusion Exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, Defendant denies all liability, and the Agreement was achieved only after arm's length, good faith negotiations between experienced counsel and with the help of a third-party neutral. As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them[.]") (citations omitted).

If this case had not settled, the Parties would have to engage in costly litigation and discovery, such as written discovery and depositions. Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Draher Dec. ¶ 21).

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently.

The Parties engaged in substantial investigation and analysis before and while negotiating the Settlement. Specifically, Defendant produced payroll data for the Plaintiffs. Plaintiffs' Counsel engaged the services of a PhD to build a damages model using this data. Both sides are represented by competent and skilled wage and hour attorneys. During negotiations, and during and after the mediation, the Parties' Counsel argued as to each other Party's respective positions, and disputes remain. (Draher Dec. ¶ 22). Accordingly, this factor supports settlement approval.

### 4. The Risks of Litigation Favor Approval.

The Settlement represents a compromise of disputed claims. Specifically, Representative Plaintiff alleged a company-wide policy and practice of not paying Plaintiffs all overtime earned by not paying for time worked during unpaid meal breaks. Defendant has denied liability throughout the litigation and asserts that Representative Plaintiff was paid in compliance with all applicable laws. Though the matter settled, the Parties continue to disagree about the claims and defenses, including whether the Plaintiffs are entitled to any compensation, and whether the claims alleged can proceed collectively. Additionally, there is the risk that Representative Plaintiff could lose entirely or obtain a smaller monetary remedy. (Draher Dec. ¶ 20).

### 5. The Opinion of Plaintiffs' Counsel Favor Approval.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Here, Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, Plaintiffs' Counsel acted in good faith and vigorously advocated in the best interests of the Plaintiffs. Plaintiffs' Counsel conducted a thorough assessment of the claims and defenses. And with recovery approximately 70% of alleged unpaid overtime, Plaintiffs' Counsel believes that the proposed Settlement is fair, adequate, and reasonable. (Draher Dec. ¶ 24). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members.

The Parties have reached a proposed settlement of Plaintiffs' FLSA claims to resolve this suit in its entirety. "In light of the fact that this is an 'opt-in class' action, there are no "absent class

members'"; therefore, this factor is not relevant and is neutral. *Murton v. Measurecomp.*, LLC, No. 1:07CV3127, 2009 WL 10715595, at *7 (N.D. Ohio Aug. 10, 2009); *Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 11636094, at *5 (S.D. Ohio Sept. 2, 2010) (noting that the court may consider only those of the seven factors that are relevant to the case).

Nevertheless, when notice was sent to members of the putative collective, they were given information about the lawsuit and the effects of joining this lawsuit. Among the information that was shared was that any person that opted into the case would be bound by any settlement reached, and that Representative Plaintiff would be making decisions on behalf of the collective. Every single person who joined this lawsuit was therefore aware that, if a settlement was reached, they would be bound by it if they joined the case. Nevertheless, Representative Plaintiff is not aware of any person who has objected or been opposed to the settlement. Accordingly, this factor favors approval of the settlement.

### 7. The Public Interest.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13; *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement Collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Therefore, just as in *Wright*, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement Distributions Are Fair, Reasonable, and Adequate.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See, e.g., Dillworth v. Case Farms*

7

*Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sept. 9, 2016) (citations omitted).

### 1. The Individual Settlement Payments Are Reasonable and Adequate.

As mentioned above, as part of negotiations, Plaintiffs' Counsel retained an expert to analyze the time and payroll data for the Plaintiffs. The total settlement amount reflects 70% of the alleged and estimated unpaid overtime for the Plaintiffs. The Settlement compensates the Plaintiffs for alleged unpaid overtime wages according to his or her *pro rata* share of the Net Settlement Fund on the amount of estimated alleged unpaid overtime owed to the Plaintiff as calculated in Plaintiffs' Counsel's damages model. (Draher Dec. ¶ 25). As such, each Plaintiff can obtain compensation for alleged unpaid wages that are proportional to the amount of their alleged damages, as well as those suffered by the class as a whole. "This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 U.S. Dist. LEXIS 210868 at *22. Accordingly, the Individual Settlement Payments are reasonable and adequate.

### 2. Representative Plaintiff's Service Award Is Proper and Reasonable.

The Agreement provides for a Service Award of $5,000 to Representative Plaintiff, in addition to her Individual Settlement Payment. (Draher Dec. ¶ 17). Courts routinely approve service awards to named plaintiffs in class and collective action litigation matters, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645,

at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. Defendant does not contest this application.

### 3. The Attorneys' Fees and Costs to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of the Settlement are fair to the Eligible Settlement Participants, it may review the Parties' Agreement as to the provision of Attorneys' Fees and Costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

Here, the Representative Plaintiff is requesting that the Court approve reasonable attorneys' fees of $98,333.33, which represents one-third of the Gross Settlement Fund. Defendant does not oppose the award of fees. "The Sixth Circuit has approved a court's use of the percentage-

of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *28 (S.D. Ohio Sep. 25, 2020) (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010).

This conclusion was recently reiterated in *Harsh v. Kalida Mfg.*, No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (N.D. Ohio Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Courts regularly hold that one-third of the settlement fund "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)); *see also Ganci,* 2019 U.S. Dist. LEXIS 207645, *15 (approving an award of 33 1/3% of a settlement fund in a wage and

10

hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same).

Furthermore, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Draher Dec. ¶ 26). Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19.

Finally, courts acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

11

### 4. The Court Should Authorize Reimbursement of Costs.

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which are $15,973.33. (Draher Dec. ¶ 18). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining the Settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel. Defendant does not oppose the reimbursement of reasonable costs.

### III. CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for Attorneys' Fees and Costs; (3) approve the requested Service Award; and (4) retain jurisdiction to enforce the Settlement, if necessary.

Respectfully submitted,

| **NILGES DRAHER LLC** | **ROLF GOFFMAN MARTIN LANG LLP** |
|---|---|
| */s/ Shannon M. Draher* | */s/ Christopher G. Kuhn (with permission)* |
| Shannon M. Draher (0074304) | Robert C. Pivonka (0067311) |
| Hans A. Nilges (0076017) | Christopher G. Kuhn (0082822) |
| 7034 Braucher St, Suite B | 31105 Bainbridge Road, Suite 4 |
| North Canton, OH 44720 | Cleveland, Ohio 44139 |
| Telephone: (330) 470-4428 | Telephone: (216) 514-1100 |
| Facsimile: (330) 754-1430 | Facsimile: (216) 682-2130 |
| sdraher@ohlaborlaw.com | Pivonka@RolfLaw.com |
| hans@hans@ohlaborlaw.com | Kuhn@RolfLaw.com |
| *Counsel for Plaintiffs* | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on March 14, 2023. Parties may access this filing through the Court's system.

*/s/ Shannon M. Draher*
Shannon M. Draher

*Counsel for Plaintiffs*